# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY ALLEN COLES,<br><br>                              Petitioner,<br><br>        v.<br><br>ELVIN VALENZUELA, Warden,<br>California Men's Colony,<br><br>                              Respondent, | CASE NO. 13-CV-211 JLS (PCL)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION; (2) DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; AND (3) DENYING CERTIFICATE OF APPEALABILITY**<br><br>(ECF Nos. 1, 15) |

Presently before the Court is Magistrate Judge  Peter C. Lewis's Report and Recommendation (R&R) advising the Court to deny Petitioner Ray Allen Coles' Petition for Writ of Habeas Corpus.  (R&R, ECF No. 15.)  Also before the Court are the Petition (ECF No. 1) and the Petitioner's Objections to the R&R (Objections, ECF Nos. 16, 17, 20, 22, & 24).  For the reasons stated below, the Court **ADOPTS** the R&R in its entirety, **DISMISSES WITH PREJUDICE** Petitioner's writ of habeas corpus, and **DENIES** a certificate of appealability.

13cv0211

**BACKGROUND**

Magistrate Judge Lewis' R&R contains a thorough and accurate recitation of the factual and procedural history underlying the instant motion.  (R&R, ECF No. 15 at 2–7.)  This Order incorporates by reference the background as set forth in the R&R.

**LEGAL STANDARD**

**1.      Review of the Report and Recommendation**

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation.  The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz,* 447 U.S. 667, 673–76 (1980).  However, in the absence of a timely objection, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

**2.      Cognizable Claim for Federal Relief**

Under federal law, a prisoner seeking relief on claims related to imprisonment may file a petition for habeas corpus pursuant to 28 U.S.C. § 2254.  A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Federal intervention in state court proceedings is only justified when there are errors of federal law.  *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).  Federal habeas courts are bound by a state's interpretation of its own laws.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") controls the review of Petitioner's federal habeas petitions.  *See Lindh v. Murphy*, 521 U.S. 320,

322–23 (1997).  AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A federal court can grant habeas relief only when the result of a claim adjudicated on the merits by a state court "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court authority, or (2) "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted) (citation omitted). An "unreasonable" application of precedent "must have been more than incorrect or erroneous"; it "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).    Further, even if a reviewing federal court determines a constitutional error has occurred, relief is only authorized if the petitioner can show that the "error had a substantial and injurious effect" on his conviction or sentence. *Bains v. Cambra*, 204 F.3d 964, 977 (9th  Cir. 2000).

## ANALYSIS

Petitioner claims that he is being unconstitutionally confined because (1) he received ineffective assistance of trial counsel; (2) the trial court erred in refusing to instruct the jury on accident or misfortune; (3) the trial court erred by permitting the prosecutor to impeach him by questioning him about his prior drug procurement; (4) the trial court erred in instructing the jury on flight; and (5) the trial court's errors cumulated to deny him a fair trial.  Petitioner's claims are considered on the merits with a brief summary of the R&R's conclusions and Petitioner's objections.

1    **1.    Ineffective Assistance of Counsel**

2          Petitioner alleges Turner ineffectively represented him at trial by: (1) failing to

3 perform an investigation and interview a witness before trial; (2) failing to impeach a

4 prosecution witness; (3) failing to request a limiting instruction; and (4) failing to move

5 for mistrial.  Magistrate Judge Lewis concluded that Petitioner failed to establish a

6 valid ineffective assistance of counsel claim.  (R&R, ECF No. 15 at 10–19.)

7          The Sixth Amendment guarantees the effective assistance of counsel. The United

8 States Supreme Court set forth the test for demonstrating ineffective assistance of

9 counsel in *Strickland v. Washington,* 466 U.S. 668, (1984). The benchmark for

10 assessing claims of ineffective assistance of counsel is "whether counsel's conduct so

11 undermined the proper functioning of the adversarial process that the trial cannot be

12 relied on as having produced a just result." *Nunes v. Mueller*, 350 F.3d 1045, 1051 (9th

13 Cir. 2003.) (quoting *Strickland*, 466 U.S. at 686). A petitioner must first show that,

14 considering all the circumstances, counsel's performance fell below an objective

15 standard of reasonableness.  *Strickland*, 466 U.S. at 687–88.   After a petitioner

16 identifies the acts or omissions that are alleged not to have been the result of reasonable

17 professional judgment the court must determine whether, in light of all the

18 circumstances, the identified acts or omissions were outside the wide range of

19 professionally competent assistance. *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521,

20 (2003).

21          Second, a petitioner must establish that he was prejudiced by counsel's deficient

22 performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a

23 reasonable probability that, but for counsel's unprofessional errors, the result of the

24 proceeding would have been different." *Id.* at 694. A reasonable probability is "a

25 probability sufficient to undermine confidence in the outcome." *Id.* See also *Williams*,

26 529 U.S. at 391–92; *Laboa v. Calderson*, 224 F.3d 972, 981 (9th Cir. 2000).

27 Furthermore, "the likelihood of a different result must be substantial, not just

28 conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). A reviewing court

"need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . .that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.' "*Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

## A.   *Failing to Perform an Investigation and Interview a Witness Before Trial*

Petitioner contends that Turner's failure to interview Patterson, despite Petitioner's indication to Turner prior to trial that he did not want the witness's presence to "see the light of day," amounts to ineffective assistance of counsel. (Pet., ECF No. 1 at 23–29.) The R&R concluded Patterson's "testimony was not compelling enough to create a substantial likelihood that the result of Petitioner's trial would be different." (R&R, ECF No. 15 at 15.) Further, Patterson's testimony, albeit favorable to the Petitioner, was "not exculpatory, nor [did] it shed any direct and definitive light on Petitioner's innocence." (*Id.*) Consequently, the R&R determined that the omission of Patterson's testimony did not prejudice Petitioner. (*Id.*)

Petitioner reasserts his ineffective assistance of counsel arguments in his objections to the R&R. (Objections, ECF No. 16 at 5–16.) First, Petitioner argues that the California Court of Appeal incorrectly relied on Petitioner's testimony at trial which was intended to discredit Marcum's false cover up story. (*Id.* at 7.) Next, Petitioner asserts that because neither Turner nor Petitioner knew Patterson witnessed the incident, the logic of the California Court of Appeal's public policy argument fails. (*Id.* at 8.) Petitioner also presents Turner's signed declaration in which Turner admits:

"I failed my client by not asserting myself that we had to find and interview Ms. Patterson." (*Id.* at 9.) Next, Petitioner contends the R&R failed to adequately consider the reasonableness of the California Court of Appeal's opinion. (*Id.* at 11.)   In conclusion, Petitioner argues that the length of time the jury took to deliberate along with the number of questions the jurors' asked indicate that the admission of Patterson's testimony "would have been reasonably likely to sway *one juror* if not more, to vote not guilty."  (*Id.* at 12.)

Petitioner fails to demonstrate that Turner's decision not to investigate Patterson as a witness was unreasonable. *Strickland* provides an objective standard for reviewing the reasonableness of counsel's decisions "viewed as of the time of counsel's conduct."  466 U.S. at 688, 690.  Therefore, Turner's statements admitting error in the *post-trial* motion and supporting affidavit are not dispositive of the reasonableness of his decisions before and at the time of trial. (Objections, ECF No. 16 at 8–10.)  If the Court relied on these subjective reflections, it would invite the very policy issues the Supreme Court sought to avoid.  *See Strickland*, 466 U.S. at 690 (warning that "the availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges" and "rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.").

In addition, Turner knew that Patterson was present in his apartment the evening of the incident and understood that Petitioner did not want his fiancee to find out that he had female company that night. (R&R, ECF No. 15 at 12.)  Petitioner insists that the California Court of Appeal was misguided when it cited Petitioner's in-court testimony that nobody was with him the night of the incident.  (Objection, ECF No. 16 at  5–7.)  Petitioner argues that Turner asked him whether he had company that night to illustrate that Marcum initially told the police a false cover story,  and that the California Court of Appeal's reliance on this statement was an unreasonable interpretation of the facts.

However, the Court does not find that the Court of Appeal unreasonably interpreted the facts in stating, "Given defendant's own affirmative conduct reflecting his desire to not have Patterson's presence revealed, he cannot now cite her absence as showing deficient performance by his trial counsel." (Objection, ECF No. 16 at 5.)   Even assuming Turner intended to highlight Marcum's false story in that particular line of questioning, in light of the context of the case, the California Court of Appeal's reasoning was reasonable.   The court noted that Petitioner elaborated on his statement he was alone mentioning, "the last thing he did before he fell asleep that night was talk to his [fiancee] on the phone." (Lodgment 5 at 13.)   This testimony is indicative of Petitioner's intention to assert his image as a loyal companion to his fiancee at the time. Additionally, Turner testified that Petitioner did not want information regarding Patterson's presence "to see the light of day." (Lodgment 14 at 1417–18.)

Petitioner also contends since neither Petitioner nor Turner knew that Patterson actually witnessed the incident, the California Court of Appeal's public policy argument fails.   To the contrary, the policy intended by *Strickland* is to prevent "intrusive post-trial inquiry" which would discourage defense counsel from even taking cases if they knew an investigative team would scour the record and collect new evidence.   *Strickland*, 466 U.S. at 690.   That Petitioner and Turner did not know Patterson witnessed the incident bolsters the state courts' findings that the decision not to call Patterson was reasonable.   Supplemented with Petitioner's affirmative instruction not to involve Patterson (Pet., ECF No. 1 at 55.), Turner's conduct, was in accord with what a reasonable attorney in his place would have done. *See Strickland*, 466 U.S. at 691 (stating "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").   Despite Turner's admission that "[he] wished that [he] pushed Mr. Coles a little harder to get information out of him about [Patterson]" (Pet., ECF No. 1 at 55.), as noted above, the Court evaluates how a reasonable attorney would have acted given the same

13cv0211

circumstances; not the attorney's personal reflections on what should have been done. Considering the record as a whole, Turner's decision not to interview Patterson, at the time he made that decision, fit within an objective standard of reasonableness.

Second, Petitioner fails to show prejudice.  Petitioner argues that the length of time the jury took to deliberate in this case increases the likelihood that the omission of Patterson's testimony prejudiced Petitioner.   (Objections, ECF No. 16 at 14.)  In addition, Petitioner emphasizes that even one juror changing his vote would have produced a more favorable outcome for Petitioner. (*Id.* at 14.)  Furthermore, Petitioner cites *Cannedy v. Adams*, holding that given evidence that cuts to the "heart of [the key witness's] credibility" in a "he said, she said" case it is "objectively unreasonable to not acknowledge that both outcomes had a reasonable probability of occurring." 706 F.3d 1148, 1153, 1165 (9th Cir. 2013), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1001 (U.S. 2014) (child molestation case that required the jury to weigh the victim's testimony she was abused against the step-father's testimony she fabricated the allegations).  *See* 706 F.3d at 1153.

Here, the evidence presented involves more than mere "he said, she said" evidence.  As discussed in the R&R, the government relied on both Marcum's and Kasprzak's testimony as key witnesses. (R&R, ECF No. 15 at 14.)  Furthermore, the government introduced self-incriminating statements made by Petitioner to law enforcement officers. (*Id.* at 15.)  Even though Patterson's testimony was favorable to Petitioner, her testimony was not exculpatory.  In this case, it would be yet another account of the events that night and the jury's determination would also take into account the testimony of other witnesses.  In light of the strength of the government's case, it is objectively reasonable that the California Court of Appeal concluded that there was no reasonable probability that, but for the omission of Patterson's testimony, there would have been a different result.  *See Rios v. Rocha*, 299 F.3d 796, 808–09 (9th Cir. 2002) ("ineffective assistance claims based on a duty to investigate must be

considered in light of the strength of the government's case" (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986)).

The California Court of Appeal did not err in holding that Turner's failure to investigate was reasonable and did not result in prejudice to Petitioner. Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

**B.      *Failing to Impeach a Prosecution Witness***

Petitioner asserted that Turner failed to impeach Marcum about her false statement to police and failed to introduce evidence of a statement she made out of court describing the incident as a "fall." (Pet., ECF No. 1 at 29–30.) The R&R noted that Marcum's inconsistency had nothing to do with her observations of confrontation between Petitioner and the victim. (R&R, ECF No. 15 at 16.) In addition, the R&R found that the jury did hear opinion testimony that Marcum "was not a trust worthy person." (R&R, ECF No. 15 at 17.) Furthermore, the R&R concluded that Marcum's use of the word "fell" in an out of court statement does not create a reasonable likelihood the result at trial would be different. (*Id.*) The R&R emphasized that the word "fell" could be reasonably interpreted as consistent with the prosecution's case, and Marcum described the incident in detail, in court to the jurors themselves. (*Id.*) Consequently, the R&R determined that Turner's failure to impeach Marcum and introduce evidence of her out of court statement did not prejudice Petitioner. (*Id.*)

Petitioner does not object to the R&R's recommendation the Court deny Petitioner's claim that Turner's failure to impeach Marcum amounted to ineffective assistance of counsel. Having reviewed this portion of the R&R, the Court finds that is thorough, well-reasoned, and contains no clear error. Accordingly, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

**C.      *Failing to Request a Limiting Instruction***

Petitioner asserted that Turner's failure to request the trial judge to instruct with CALCRIM No. 375 to limit the jury's consideration of the uncharged crime of

procuring cocaine revealed upon cross-examination of Petitioner was prejudicial. (Pet., ECF No. 1 at 30–32.)  Magistrate Judge Lewis found other admissible evidence, aside from Petitioner's cross-examination,  exposed Petitioner's cocaine procurement. (R&R, ECF No. 15 at 17–18.)   Furthermore, the R&R explained that the inquiry into Petitioner's drug activity was primarily used "to attack his credibility as a witness and establish foundation for Marcum visiting Petitioner's apartment." (R&R, ECF No. 15 at 19.)  As a result, the R&R determined that Turner's failure to request limiting instructions when Petitioner revealed his prior drug procurement did not prejudice Petitioner.  (*Id.*)

Petitioner does not object to the R&R's recommendation the Court deny Petitioner's claim that Turner's failure to request a limiting instruction amounted to ineffective assistance of counsel. Having reviewed this portion of the R&R, the Court finds that is thorough, well-reasoned, and contains no clear error.  Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

### D.    *Failing to Move for Mistrial*

Petitioner asserted that the cross-examination on the procurement of cocaine was prejudicial and Turner should have moved for mistrial. (Pet., ECF No. 1 at 30–32.) Considering essentially the same argument made in support of Petitioner's failure to request a limiting instruction claim, the R&R concluded that Turner's failure to move for mistrial was not prejudicial within the meaning of *Strickland*.  (R&R, ECF No. 15 at 19.)

Petitioner does not object to the R&R's recommendation the Court deny Petitioner's claim that Turner's failure to move for mistrial amounted to ineffective assistance of counsel. Having reviewed this portion of the R&R, the Court finds that is thorough, well-reasoned, and contains no clear error.  Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

13cv0211

## 2.      Refusing to Instruct the Jury on Accident or Misfortune

Petitioner contends that the trial court's refusal to instruct the jury on accident or misfortune deprived him of his federal constitutional right to present a defense. (Pet., ECF No. 1 at 44.)  Magistrate Judge Lewis relied on the California Court of Appeal's reasoning that in order "to support an accident defense, there must be accidental conduct *by the defendant*, not merely accidental conduct *by the victim*."  (R&R, ECF No. 15 at 24 (quoting Lodgment 5 at 16–20).)   Furthermore, because "the trial court stated to the jury that if it did not find that Petitioner acted purposely or willingly, it could not convict him of assault or battery," the R&R concluded the jury instructions "did not render Petitioner's trial fundamentally unfair."  (*Id.*)  Consequently, the R&R determined that the trial court's refusal to instruct on accident "is not clearly contrary to any United States Supreme Court precedent."  (*Id.*)

Petitioner reasserts his refusal to instruct argument in his objections to the R&R, insisting he was entitled to an accident defense. (Objections, ECF No. 16 at 18.) Petitioner cites *Bradley v. Duncan*, in which the Ninth Circuit emphasized Due Process "requires that criminal defendants be afforded a meaningful opportunity to present a complete defense."   (*Id.* at 19 (quoting 315 F.3d 1091, 1098–99 (9th Cir. 2002)).) Petitioner's defense theory is that he was engaged in the lawful conduct of telling the victim to be quiet, and the victim accidently stumbled over the railing. (*Id.* at 18–19.) Thus, the thrust of Petitioner's defense was that he lacked the requisite *mens rea* to be convicted of the crime.  (*Id.*)  Petitioner argues the facts of this case would allow a reasonable jury to find in his favor if instructed on accident or misfortune.  (*Id.*)

When a petitioner challenges the omission of proposed jury instructions, the Court determines whether the jury instructions given at trial covered the petitioner's defense theory of the case.  *U.S. v. Kenny*, 645 F.2d 1323, 1337 (9th Cir. 1981). Indeed, as Petitioner argues, the Fourteenth Amendment requires all criminal defendants be allowed to present a defense. *See Bradley*, 315 F.3d at 1098.  However, a federal habeas claim that a state trial court gave erroneous jury instructions is only

13cv0211

cognizable if it "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 63, 72 (1991).  The only question about the state courts evidentiary ruling the Court must consider is "whether the trial court's [evidentiary ruling]. . . 'rendered the trial so fundamentally unfair as to violate due process.'" *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008).

Given the elements of applicable state law and the instructions given at trial, it was reasonable for the California Court of Appeal to conclude Petitioner's trial was not fundamentally unfair.   The California Court of Appeal held that "an accident defense can apply to charges of assault or battery when the defendant unwillingly or unknowingly (i.e. accidently) directed force towards, or touched, the victim." (Lodgment 5 at  18.) Furthermore, the California Court of Appeal explained "intent to harm is not an element of assault or battery; all that is required is knowledge of the relevant facts and intent to do the act that is likely to, or does, result in the application of the wrongful force."  (*Id.* at 19.)  For the crime of battery, which Petitioner was convicted of, the trial court  instructed the jury with CALCRIM 925:

> To prove that the defendant is guilty of this charge, the People must prove that:
>
> 1. The defendant willfully touched Ajmal Wardak in a harmful or offensive manner;
>
> AND
>
> 2. Ajmal Wardak suffered serious bodily injury as a result of the force used.
>
> Someone commits an act willfully when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage . . .

(Lodgment 1 at 74.)

In order to convict Petitioner of battery, the jury was required to determine that Petitioner acted willingly or on purpose.  As the R&R explained, the trial court's instructions allowed the jury to consider Petitioner's defense.  After reviewing the record, the Court finds no evidence that the instructions given or lack of accident instructions prevented the jury from considering the possibility that the victim

accidently fell over the railing.  Therefore, it was objectively reasonable for the California Court of Appeal to conclude that the lack of accident instructions did not result in a fundamentally unfair trial.

Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

### 3.   Cross-Examination of Prior Drug Procurement

Petitioner contends the trial court erred in allowing the prosecution to cross-examine Petitioner on "highly prejudicial" testimony relating to his drug procurement in Miami. (Pet., ECF No. 1 at 53.)

Magistrate Judge Lewis concluded that the cross-examination of Petitioner about his drug procurement was "innocuous" because, considering the record as a whole, other admissible evidence was presented to the jury regarding Petitioner's prior drug procurement.  (R&R, ECF No. 15 at 25.)  Furthermore, the R&R explained that the Court will not second guess the state court's conclusion of state law evidentiary claims. (*Id*.)  Thus, the R&R concluded that not only was Petitioner's cross-examination about drug procurement innocuous; "petitioner's evidentiary claims [were] not cognizable and [did] not present a federal question."  (*Id*.)

Petitioner does not object to the R&R's recommendation that the Court deny Petitioner's claim that the trial court erred in allowing the prosecution to cross-examine Petitioner on his prior drug procurement.  Having reviewed this portion of the R&R, the Court finds that is thorough, well-reasoned, and contains no clear error.  Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

### 4.   Jury Instruction on Flight

Petitioner contends that the court erred by giving the jury a flight instruction pursuant to CALCRIM § 372:

> If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide

the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself.

(Pet., ECF No. 1 at 55–56; Lodgment 1 at 72.)

Magistrate Judge Lewis concluded that the state court's decision to instruct the jury on flight was not contrary to, nor an unreasonable application of United States Supreme Court authority because "given the phrasing of the instruction, and the facts, the prosecution was entitled to a flight instruction." (R&R, ECF No. 15 at 27.) The R&R reasoned the instruction was proper because it allowed the jury to determine whether Petitioner tried to flee, and the jury could only consider flight as part of the evidence. (*Id.*) Furthermore, the R&R noted CALCRIM § 372 explicitly states "evidence that the defendant tried to flee cannot prove guilt by itself." (*Id.*)

Petitioner objects to the R&R's conclusions and cites other jurisdictions which have "advised against a flight instruction's use." (Objections, ECF No. 16 at 22.) Petitioner insists he did not engage in the type of "deceptive and evasive conduct" warranting the use of a flight instruction. (*Id.* at 24.) Petitioner argues by giving the instruction, the jury might think that the trial judge "thought there was flight" in this case. (*Id.*) Hence, Petitioner claims giving the flight instruction in this case "shredd[ed] Due Process." (*Id.*)

The Court must ask whether the trial judge's jury instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 63, 72 (1991). "[I]t must be established not merely that the instruction [was] undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

As noted above, the flight instruction explicitly stated that evidence of flight alone may not be used to prove guilt. In addition, there is evidence of evasive conduct. Both Marcum and Kasprzak testified that Petitioner insisted they not call the police, and Kasprzak testified Petitioner shook her while telling her not to call the police. (R&R, ECF No. 15 at 26.) Petitioner denied that he told Kasprzak and Marcum to not call the police, but also admitted that he should not have moved the victim due to the

victim's head injury.  (*Id.* at 5.)  In light of the evidence presented at trial and the phrasing of the instruction, the California Court of Appeal reasonably concluded that the flight instruction did not violate Petitioner's due process rights.

Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this basis.

### 5.   **Cumulative Error**

Petitioner contends that the cumulative effect of the errors violated his right to due process.  (Pet., ECF No. 1 at 57.)  After reviewing all of Petitioner's contentions, Magistrate Judge Lewis found no cumulative error.  (R&R, ECF No. 15 at 28.) Petitioner objects to the R&R's recommendation, essentially re-asserting his arguments in support of the contentions addressed previously. (Objections, ECF No. 16 at 25.)

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair, even where each error considered individually would not require reversal."  *Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir.2007); *see also Alcala v. Woodford*, 334 F.3d 862, 893 (9th Cir. 2003).  "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense 'far less persuasive,' . . . and thereby had a 'substantial and injurious effect or influence' on the jury's verdict." *Parle*, 505 F. 3d at 928 (internal citations omitted).

The California Court of Appeal and Magistrate Judge Lewis reviewed the errors alleged here in detail and found no cumulative error.  Petitioner's argument for cumulative error is merely a recitation of the errors previously alleged.  While Petitioner does list several Ninth Circuit cases for the Court to consider, he does not offer argument as to how the alleged errors here resulted in a fundamentally unfair trial, nor does he analogize to any of the cases he cites.  The Court concludes the errors alone would not have substantially influenced the jury's verdict and sees no cumulative error when considering the alleged errors in their entirety.

Therefore, the Court **ADOPTS** the R&R's recommendation **DENYING** Petitioner's claim on this cumulative basis.

**CERTIFICATE OF APPEALABILITY**

The Court is obliged to determine whether a certificate of appealability should be issued in this matter. A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 225(c)(2). When a petitioner's claims have been denied on their merits, as here, a petitioner can meet the threshold "substantial showing of the denial of a constitutional right," by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) a court could resolve the issues in a different manner; or (3) the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1024–25 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000) and *Barefoot v. Estelle*, 463 U.S. 880 (1983)).

Here, the Court finds that no reasonable jurist could disagree with this resolution of Petitioner's constitutional claims. Evidence in the record supports both the trial court's  and Court of Appeal's actions which is sufficient to meet due process requirements.

Accordingly, the Court **DENIES** a certificate of appealability.

**CONCLUSION**

For the reasons stated, the Court **ADOPTS** the R&R in full and **DENIES** this Petition in its entirety. This Order concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED.**

DATED:  November 17, 2014

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge